**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DELORES JACKSON WILLIAMS, individually and on behalf of herself, and all others similarly situated, | |
| Plaintiff, | Civil Action No. _____ |
| v. | |
| KATZ NANNIS + SOLOMON, PC. | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff, Delores Jackson Williams, (hereinafter, "Plaintiff"), individually, on behalf of herself, and all others similarly situated, for her causes of action against Defendant Katz Nannis + Solomon, PC ("Defendant"), alleges upon personal knowledge as to her own actions, and upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.    This action arises out of Defendant's unauthorized disclosure of the confidential personal information, Personally Identifying Information[1] ("PII") of Plaintiff and the proposed Class Members via a November 2023 cyber-attack on its information systems and Defendant's failure to reasonably mitigate against the foreseeability of such an attack. Because of Defendant's failures to implement reasonable, industry standard cybersecurity safeguards, Plaintiff and the Proposed Class Members have and will continue to suffer harm.

---

[1] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8).

1

2.      Because of Defendant's failures, the sensitive PII of Plaintiff and the proposed class were disclosed to cybercriminals, including Plaintiff's and Class Members' names and social security numbers (the "Data Breach").[2]

3.      Although Defendant discovered the Data Breach on or about November 28, 2023, Defendant failed to notify and warn Data Breach victims of the unauthorized disclosure of their PII until September 3, 2024, an egregious ten-month delay.

4.      This ten-month delay in notification is in stark contrast to Massachusetts' statutory requirement that Defendant notify Plaintiff and the proposed Class Members "as soon as practicable and without unreasonable delay." Mass. Gen. Laws Ann. ch. 93H, § 3(b).

5.      As a direct and proximate result of Defendant's failures to protect Plaintiff's and the Class Members' sensitive PII and warn them promptly and fully about the Data Breach, Plaintiff and the proposed Class have suffered widespread injury and damages necessitating Plaintiff seeking relief on a class wide basis.

6.      Indeed, Defendant's cybersecurity posture was so poor that it was unable to identify that malicious activity was in progress until the cyber gang had completed its task of stealing Plaintiff's and Class Members' valuable information.

## PARTIES

7.      Plaintiff is a resident and citizen of the State of Ohio.

8.      Defendant Katz Nannis + Solomon, PC, is a citizen and resident of the State of Massachusetts, with its principal place of business at 800 South St, Ste 250, Waltham, MA, 02453.

9.      Founded in 1998, Defendant provides a variety of services, including audit and

---

[2] Exhibit A, Notification Letter to Plaintiff.

assurance services, tax planning and compliance, and consulting and advisory services,[3] and upon information and belief, employs more than 73 people and generates approximately $17 million in annual revenue.

## JURISDICTION AND VENUE

10.    This Court has personal jurisdiction over Defendant because Defendant operates, conducts, engages in, or carries on a business in this State; as is evidenced by the fact that it maintains its principal places of business in Massachusetts; and committed tortious acts in Massachusetts.

11.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than one hundred (100) members in the proposed Class, and at least one member of the class is a citizen of a state different from Defendant.

12.    The Court has supplemental jurisdiction over Plaintiff's claims arising under state law under 28 U.S.C. § 1367.

13.    Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district.

## FACTUAL BACKGROUND

### A.  The Data Breach

14.    Around November 21, 2023, Defendant was attacked by cybercriminals.

---

[3] https://www.knscpa.com/

15.    Apparently before Defendant even noticed that its information systems had been breached, the attackers had time to perform reconnaissance of Defendant's digital assets, identity documents containing Plaintiff's and Class Members PII, and exfiltrate that data.

16.    Had Defendant implemented industry standard logging, monitoring, and alerting procedures and technology, Defendant could have prevented this exfiltration.

17.    Instead, the attackers were able to steal valuable data, including social security numbers.

18.    Though Defendant has not explained the source of the attack, or the root cause, it is likely that Defendant's cybersecurity program is woefully inadequate and could have prevented or significantly limited the attack if its cybersecurity program had met industry standards.

19.    Indeed, Defendant apparently did not even realize it was being attacked, until the attackers had completed their mission, which provides a strong indication that Defendant had failed to implement standard logging, monitoring, and alerting systems, such as data loss prevention tools, endpoint detection and response tools, and/or a security information and event management platform.

**B.   Plaintiff's Experiences**

20.    Plaintiff received a data breach notification letter from Defendant on April 22, 2024. Exhibit A.

21.    The letter failed to include any information regarding the source of the attack or any specific information on what Defendant was doing to prevent such an attack from happening again.

22.    Notwithstanding that the letter claimed that Defendant "take[s] the privacy and security of personal information very seriously," Defendant offered Plaintiff only a single year of

credit monitoring services, which is woefully inadequate to redress the harms caused by Defendant's failures.

23.    As with all recipients, Defendant "recommended that you remain vigilant for any incidents of fraud or identity theft by reviewing credit card account statements and your credit report for unauthorized activity."[4]

24.    At Defendant's direction, Plaintiff suffered monetary harm in the form of spending her valuable time responding to Defendant's Data Breach, including by reviewing her accounts for fraudulent activity.

25.    The need to spend this time was not speculative because Plaintiff has already suffered identify theft in the form of fraudulent payday loans being applied for in her name over the course of the last year, which, upon information and belief, was caused by the Data Breach.

26.    Moreover, the need to spend this time responding to Defendant's Data Breach was not speculative because Plaintiff was merely performing the tasks that Defendant told her to perform, which Plaintiff believed—and still believes—was necessary given the instructions in Defendant's notification letter.

27.    Furthermore, the time spent mitigating the effects of Defendant's failures was more significant because Defendant failed to timely information Plaintiff of the Breach, thus requiring Plaintiff to review more account information for fraudulent activity.

28.    Plaintiff's and the proposed Class Members' PII was provided to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with their obligations to keep such information confidential and secure from unauthorized access. By failing to do so, Defendant put all Class Members at risk of identity theft, financial fraud, and other harms

---

[4] *See* https://www.mass.gov/doc/2024-1598-katz-nannis-solomon-pc/download

and caused Plaintiff and Class Members to have to spend their own valuable time responding to Defendant's failures.

29.     Subsequent to the Data Breach, Plaintiff has suffered numerous, substantial injuries including, but not limited to: (i) invasion of privacy; (ii) theft of her PII; (iii) lost or diminished value of PII and PHI; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vi) statutory damages; (vii) nominal damages; and (vii) the continued and certainly increased risk to her PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

30.     Plaintiff additionally suffered actual injury in the form of experiencing an increase in spam calls, texts, and/or emails, which, upon information and belief, was caused by the Data Breach. This misuse of her PII and was caused, upon information and belief, by the fact that cybercriminals can easily use the information compromised in the Data Breach to find more information about an individual, such as their phone number or email address, from publicly available sources, including websites that aggregate and associate personal information with the owner of such information. Criminals often target data breach victims with spam emails, calls, and texts to gain access to their devices with phishing attacks or elicit further personal information for use in committing identity theft or fraud.

31.     The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which is inherent in data breaches, especially those that expose individuals' social security numbers, which

has been compounded by the fact that Defendant has still not fully informed her of key details about the Data Breach's occurrence.

32.     As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

33.     As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

34.     Plaintiff has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**C. This Data Breach was Foreseeable by Defendant**

35.     Defendant tortiously failed to take the necessary precautions required to safeguard and protect the PII of Plaintiff and the Class Members from unauthorized disclosure. Defendant's actions represent a flagrant disregard of Plaintiff's and the other Class Members' rights.

36.     Plaintiff and Class Members were the foreseeable and probable victims of Defendant's inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing PII and the critical importance of providing adequate security for that information.

37.     Cyber-attacks against companies such as Defendant are targeted and frequent. According to Forbes, there were at least 2,365 cyber attacks in 2023 with 343,338964 victims.[5]

38.     According to the Identity Theft Resource Center, the emotional toll of identity crimes is expected to continue to increase such that "assistance providers will struggle to meet the

---

[5] Mariah St. John, *Cybersecurity Stats: Facts and Figures You Should Know*, FORBES ADVISOR (Feb. 28, 2024, 2:33 PM), https://www.forbes.com/advisor/education/it-and-tech/cybersecurity-statistics.

emotional recovery needs of victims." Indeed, the report notes that "[i]dentity crime victimization is too often classified as not creating trauma for which a victim would require support, despite the fact that our latest *Consumer Impact Report* had 16 percent (16%) of respondents state they contemplated suicide as a result of victimization."[6]

39.    The increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone bothering to pay attention. According to IBM's 2022 report, "[f]or 83% of companies, it's not if a data breach will happen, but when."[7]

40.    PII is of great value to hackers and cybercriminals, and the data compromised in the Data Breach can be used for a variety of unlawful and nefarious purposes, including ransomware, fraudulent misuse, sale on the dark web, extortion, financial fraud, and identity theft.

41.    PII can be used to distinguish, identify, or trace an individual's identity, such as their name, social security number, and financial records. This can be accomplished alone, or in combination with other personal or identifying information that is connected, or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.

42.    Given the nature of the data collected, and the fact that data breaches are a well-known threat to all companies that store such information, Defendant was on notice of the harms associated with its failure to implement reasonable, industry standard cybersecurity safeguards.

**D. Defendant Failed to Comply with FTC Guidelines and other Industry Standards**

43.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices.

---

[6] Identity Theft Resource Center, *2024 Predictions*, https://www.idtheftcenter.org/identity-theft-resource-center-2024-predictions (last accessed July 11, 2024).
[7] IBM, *Cost of a data breach 2022: A million-dollar race to detect and respond,* https://www.ibm.com/reports/data-breach (last accessed July 11, 2024).

According to the FTC, the need for data security should be factored into all business decision-making.

44.     In 2016, the FTC updated its publication, *Protecting PII: A Guide for Business*, which establishes cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[8]

45.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[9]

46.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15

---

[8] *See* Federal Trade Commission, *Protecting Private information: A Guide for Business* (October 2016), https://www.bulkorder.ftc.gov/system/files/publications/2_9-00006_716a_protectingpersinfo-508.pdf.
[9] *See id*.

U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

47.      These FTC enforcement actions include actions against entities failing to safeguard PII such as Defendant. *See, e.g.*, *In the Matter of LabMD, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at \*32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

48.      Defendant failed to properly implement basic data security practices widely known throughout the industry. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customer PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

49.      Defendant was always fully aware of its obligations to protect the PII of Plaintiff and the Class Members. Defendant was also aware of the significant repercussions that would result from its failure to do so.

50.      For example, the FTC notes that companies should maintain central log files, monitor incoming traffic for signs of malicious attempts and activity, and monitoring outgoing traffic to identify signs of data exfiltration.[10] If Defendant had these controls in place, it would have realized that cybercriminals had infiltrated its systems, were performing reconnaissance to identify valuable data, and it likely would have realized that the data was being exfiltrated before it was too late.

51.      A number of industry and national best practices have been published and are widely used as a go-to resource when developing an institution's cybersecurity standards.

---

[10] *Id.* at pp. 21–22.

52.     The Center for Internet Security's (CIS) CIS Critical Security Controls (CSC) recommends certain best practices to adequately secure data and prevent cybersecurity attacks, including 18 Critical Security Controls of Inventory and Control of Enterprise Assets, Inventory and Control of Software Assets, Data Protection, Secure Configuration of Enterprise Assets and Software, Account Management, Access Control Management, Continuous Vulnerability Management, Audit Log Management, Email and Web Browser Protections, Malware Defenses, Data Recovery, Network Infrastructure Management, Network Monitoring and Defense, Security Awareness and Skills Training, Service Provider Management, Application Software Security, Incident Response Management, and Penetration Testing.[11]

53.     In addition, the National Institute of Standards and Technology (NIST) recommends certain practices to safeguard systems, *infra,* such as:

- Control who logs on to your network and uses your computers and other devices.

- Use security software to protect data.

- Encrypt sensitive data, at rest and in transit.

- Conduct regular backups of data.

- Update security software regularly, automating those updates if possible.

- Have formal policies for safely disposing of electronic files and old devices.

---

[11] *See* Rapid7, *CIS Top 18 Critical Security Controls Solutions*, https://www.rapid7.com/solutions/compliance/critical-controls (last accessed July 11, 2024).

- Train everyone who uses your computers, devices, and network about cybersecurity. You can help employees understand their personal risk in addition to their crucial role in the workplace.[12]

54.    Further still, the Cybersecurity & Infrastructure Security Agency makes specific recommendations to organizations to guard against cybersecurity attacks, including (1) reducing the likelihood of a damaging cyber intrusion by validating that "remote access to the organization's network and privileged or administrative access requires multi-factor authentication, [e]nsur[ing] that software is up to date, prioritizing updates that address known exploited vulnerabilities identified by CISA[,] [c]onfirm[ing] that the organization's IT personnel have disabled all ports and protocols that are not essential for business purposes," and other steps; (2) taking steps to quickly detect a potential intrusion, including "[e]nsur[ing] that cybersecurity/IT personnel are focused on identifying and quickly assessing any unexpected or unusual network behavior [and] [e]nabl[ing] logging in order to better investigate issues or events[;] [c]onfirm[ing] that the organization's entire network is protected by antivirus/antimalware software and that signatures in these tools are updated," and (3) "[e]nsur[ing] that the organization is prepared to respond if an intrusion occurs," and other steps.[13]

55.    Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-

---

[12] Federal Trade Commission, *Understanding the NIST Cybersecurity Framework*, https://www.ftc.gov/business-guidance/small-businesses/cybersecurity/nist-framework (last accessed July 11, 2024).
[13] Cybersecurity & Infrastructure Security Agency, *Shields Up: Guidance for Organizations*, https://www.cisa.gov/shields-guidance-organizations (last accessed July 11, 2024).

4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, as well as failing to comply with other industry standards for protecting Plaintiff's and the proposed Class Members' PII, resulting in the Data Breach.

**F.   The Data Breach Caused Plaintiff and the Class Members Injury and Damages**

56.     Plaintiff and members of the proposed Class have suffered injury and damages from the misuse of their PII that can be directly traced to Defendant, that has occurred, is ongoing, and/or imminently will occur.

57.     As stated above, unauthorized cybercriminals stole Plaintiff's and the proposed Class Members' PII, including their social security numbers.

58.     The ramifications of Defendant's failure to keep Plaintiff's and the Class's PII secure are severe. Identity theft occurs when someone uses another's personal and financial information such as that person's name or social security number, or other information, without permission, to commit fraud or other crimes.

59.     Because Defendant failed to prevent the Data Breach, Plaintiff and the proposed Class Members have suffered, will imminently suffer, and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the Class Members have suffered, will imminently suffer, or are at an increased risk of suffering:

      a.     Fraudulent misuse of PII;

b.      Monetary harm in the form of being forced to spend their own valuable time responding to Defendant's failures, including by reviewing their accounts for fraudulent activity and changing financial account information;

c.      The loss of the opportunity to control how PII is used;

d.      The compromise and continuing publication of their PII;

e.      Out-of-pocket expenses associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

f.      Delay in receipt of tax refund monies;

g.      Increase in spam texts and telephone calls;

h.      Unauthorized use of stolen PII; and

i.      The continued risk to their PII, which remains in the possession of Defendant's possession and control and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in their possession.

60.      Furthermore, the Data Breach has placed Plaintiff and the proposed Class Members at an increased risk of fraud and identity theft.

61.      Just like Defendant's instructions, the FTC recommends that identity theft victims spend their time and effort on intensive and/or costly tasks designed to help protect their personal and financial information after a data breach, including contacting the company where the fraud occurred and asking them to close or freeze accounts and changing login information; contacting one of the credit bureaus to place a fraud alert on credit files (consider an extended fraud alert that lasts for 7 years if someone steals their identity); reviewing their credit reports; seeking a credit

freeze; correcting their credit reports; and other steps such as contacting law enforcement and reporting the identity theft to the FTC.[14]

62.     Identity thieves use stolen PII such as social security numbers, which were stolen here, for a variety of crimes, including credit card fraud phone or utilities fraud, and bank/finance fraud.

63.     Identity thieves can also use social security numbers to obtain a driver's license or official identification card in the victim's name (to the extent not already stolen in the Data breach) but with the thief's picture; use the victim's name and social security number to obtain government benefits; or file a fraudulent tax return using the victim's information.

64.     In addition, identity thieves may obtain a job using the victim's social security number, rent a house or receive other services in the victim's name, and may even give the victim's PII to police during an arrest—resulting in an arrest warrant being issued in the victim's name. That can be even more problematic and difficult to remedy for someone who already has a criminal record.

65.     Moreover, the emotional trauma, stress, and anxiety suffered by Data Breach victims is severe. The fear for the financial future because they are helpless to prevent such harm on their own, some develop eating disorders, and in some cases the emotion toll manifests as post-traumatic stress disorder. Indeed, it is not uncommon for the stress and anxiety created by a data breach to result in physical harm in the form of sleep deprivation. "Being a cybercrime victim can become a vicious cycle. You might be unable to get a full night's sleep because you're worried

---

[14] *See* Federal Trade Commission, https://www.identitytheft.gov/Steps (last accessed July 11, 2024).

about your situation. This sleeplessness is due to higher levels of the stress hormones cortisol and adrenaline."[15]

66.    Further, according to the Identity Theft Resource Center's 2021 Consumer Aftermath Report, identity theft victims suffer "staggering" emotional tolls: For example, nearly 30% of victims have been the victim of a previous identity crime; an all-time high number of victims say they have contemplated suicide. 35% reported not having enough money to pay for food and utilities, while 14% were evicted because they couldn't pay rent or their mortgage. 54% percent reported feelings of being violated. [16]

67.    It must also be noted there may be a substantial time lag–measured in years– between when breach occurs and when identity theft and financial fraud occurs. Though some victims see immediate fraud on their accounts, others do not because cybercriminals often wait until the victims' credit monitoring service expires to perpetrate their financial crimes.

68.    "For the individual who is a victim of stolen data, this can often lead to headaches: changing passwords frequently, enacting credit freezes or identity monitoring, and so on."[17]

69.    PII are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

---

[15] Stanley Clark, *The Psychological Impact on the Lives of Cyber-Attack Victims*, PAINTED BRAIN (Aug. 27, 2023), https://paintedbrain.org/painted-brain-media/blogs/the-psychological-impact-on-the-lives-of-cyber-attack-victims.

[16] Jason Steele, *Credit Card and ID Theft Statistics*, CREDITCARDS.COM (June 11, 2021), https://www.creditcards.com/statistics/credit-card-security-id-theft-fraud-statistics-1276 (citing Identity Theft Resource Center, *2021 Consumer Aftermath Report* (May 26, 2021), https://www.idtheftcenter.org/post/the-identity-theft-resource-centers-2021-consumer-aftermath-report-reveals-impacts-on-covid-19-identity-crime-victims).

[17] Center for Internet Security, *How You're Affected by Data Breaches*, https://www.cisecurity.org/insights/blog/how-youre-affected-by-data-breaches (last accessed July 11, 2024).

This is especially the case here given that the data has at least partially been posted to the dark web already.

70.    Social security numbers are among the worst kind of PII to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud.[18]

71.    For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines. Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.[19] Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

72.    Moreover, it is not an easy task to change or cancel a stolen social security number. An individual cannot obtain a new social security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."

_____

[18] *See* U.S. Social Security Administration, *Identity Theft and Your Social Security Number*, Publication No. 05-10064 (July 2021), https://www.ssa.gov/pubs/EN-05-10064.pdf.
[19] *See id.*

73.    This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[20]

74.    Accordingly, the Data Breach has caused Plaintiff and the proposed Class Members a greatly increased risk of identity theft and fraud, in addition to the other injuries and damages set forth herein, specifically the unauthorized disclosure, lost time and efforts in remediating the impact of the Data Breach, and other injury and damages as set forth in the preceding paragraphs.

75.    Defendant knew or should have known of these harms which would be caused by the Data Breach that they permitted to occur and strengthened their data systems accordingly.

## CLASS ALLEGATIONS

76.    Plaintiff brings this nationwide class action individually and on behalf of all other persons similarly situated pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, and Fed. R. Civ. P. 23(b)(3).

77.    Plaintiff proposes the following Class definition ("Nationwide Class"), subject to amendment based on information obtained through discovery:

> **All persons whose PII was compromised because of the Data Breach experienced by Defendant beginning on or about November 21, 2023.**

78.    Defendant has not explained the areas of its systems that the attacker had access to, so it is entirely possible that the Class will include consumers who information Defendant stores and maintains. Thus, Plaintiff reserves the right to amend the proposed class definition.

---

[20] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT WORLD (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

79.    Excluded from the Class are Defendant's members, officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

80.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of Class Members' claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims for each Class Member.

81.    This action satisfies the requirements for a class action under Fed. R. Civ. P. 23(a)(1)-(3) and Fed. R. Civ. P. 23(b)(2), including requirements of numerosity, commonality, typicality, adequacy, predominance, and superiority.

82.    **Numerosity, Fed. R. Civ. P. 23(a)(1):** The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the PII of thousands of individuals was compromised in the Data Breach. Such information is readily ascertainable from Defendant's records.

83.    **Commonality, Fed. R. Civ. Proc. 23(a)(2), and Predominance, Fed. R. Civ. Proc. 23(b)(3):** There are numerous questions of law and fact common to the Class. As such, there is a well-defined community of interest among the Members of the Class. These questions predominate over questions that may affect only individual Class Members because Defendant has acted on grounds generally applicable to the Class. Such common legal or factual questions include, but are not limited to:

a.      Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' PII;

b.      Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.      Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

d.      Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations including, *e.g.*, the FTC Act;

e.      Whether computer hackers obtained Plaintiff's and Class Members' PII in the Data Breach;

f.      Whether Defendant knew or should have known that their data security systems and monitoring processes were deficient;

g.      Whether Defendant failed to adequately respond to the Data Breach, including failing to timely notify the Plaintiff and the Class Members;

h.      Whether Defendant's failures amounted to negligence;

i.      Whether Defendant breached their contractual promises;

j.      Whether Defendant were unjustly enriched;

k.      Whether Defendant intruded into the private affairs of Plaintiff and the proposed Class Members;

l.      Whether Plaintiff and the Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

m.      Whether Defendant's acts violated the law, and;

20

n.      Whether Plaintiff and the Class Members are entitled to damages including compensatory and punitive damages, and/or injunctive relief.

84.     **Typicality, Fed. R. Civ. P. 23(a)(3):** The claims or defenses of Plaintiff are typical of the claims or defenses of the proposed Class because Plaintiff's claims are based upon the same legal theories and same violations of law. Plaintiffs' claims are typical of those of other Class Members because Plaintiff's PII, like that of every other Class Member, was compromised in the Data Breach, and all arise from the same set of facts regarding Defendant's failures:

a.      to protect Plaintiff's and Class Members' PII;

b.      to discover and remediate the Breach of its computer systems more quickly; and

c.      to disclose to Plaintiff and Class Members in a complete and timely manner information concerning the security breach and the theft of their Personal Information.

85.     **Adequacy, Fed. R. Civ. P. 23(a)(4):** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

86.     **Superiority, Fed. R. Civ. P. 23(b)(3):** A class action is a superior method for the fair and efficient adjudication of this controversy because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, and joinder of the Class Members is otherwise impracticable. Class treatment presents a superior mechanism for fairly resolving similar issues and claims without repetitious and wasteful litigation for many reasons, including the following:

a.      It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions. Many members of the Class are not in the

position to incur the expense and hardship of retaining their own counsel to prosecute individual actions, which in any event might cause inconsistent results.

b.        When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Class. This will promote global relief and judicial efficiency in that the liability of Defendant to all Class Members, in terms of money damages due and in terms of equitable relief, can be determined in this single proceeding rather than in multiple, individual proceedings where there will be a risk of inconsistent and varying results.

c.        A class action will permit an orderly and expeditious administration of the Class claims, foster economies of time, effort, and expense, and ensure uniformity of decisions. If Class Members are forced to bring individual suits, the transactional costs, including those incurred by Defendant, will increase dramatically, and the courts will be clogged with a multiplicity of lawsuits concerning the very same subject matter, with identical fact patterns and the same legal issues. A class action will promote a global resolution and will promote uniformity of relief as to the Class Members and as to Defendant.

d.        This lawsuit presents no difficulties that would impede its management by the Court as a class action. The class certification issues can be easily determined because the Class includes only Defendant's client's customers, the legal and factual issues are narrow and easily defined, and the Class membership is limited. The Class does not contain so many persons that would make the Class notice procedures unworkable or overly expensive. The identity of the Class Members can be identified from Defendant's records, such that direct notice to the Class Members would be appropriate.

87.     **Injunctive and Declaratory Relief, Fed. R. Civ. Proc. 23(b)(2):** In addition, Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

88.     Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

89.     Plaintiff re-alleges and incorporates by reference all paragraphs above as if fully set forth herein.

90.     Defendant collected the PII of Plaintiff and the proposed Class Members and stored this information in their computer information technology systems.

91.     Defendant had full knowledge of the sensitivity of the PII to which they were entrusted, and the types of harm that Plaintiff and the Class Members could and would suffer if the PII was wrongfully disclosed to unauthorized persons. Defendant had a duty to Plaintiff and each Class Member to exercise reasonable care in holding, safeguarding, and protecting that information, including by implementing logging, monitoring, and alerting systems sufficient to identify when malicious actors were performing reconnaissance activities and exfiltrating data.

92.     Plaintiff and the Class Members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the Class Members had no ability to protect their data in Defendant's possession.

93.     By collecting and storing this data in their computer systems, Defendant had a duty of care to use reasonable means to secure and safeguard it, to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect if that PII was exposed to the internet and to give prompt notice to those affected in the case of a data breach.

94.     Defendant owed a common law duty of care to Plaintiff and the Class Members to provide adequate data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the PII.

95.     In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

96.     Indeed, the FTC Act is both a basis for Defendant's negligence per se and anyway informs the standard of care that Defendant was required to act with.

97.     Defendant breached its duties, and were negligent, by acts of omission or commission, by failing to use reasonable measures to protect the Plaintiff's and Class Members' PII. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.     Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' PII;

b.     Failing to adequately train employees on proper cybersecurity protocols;

c.     Failing to adequately monitor the security of their networks and systems;

24

d.      Failure to periodically ensure that their network system had plans in place to maintain reasonable data security safeguards;

e.      Allowing unauthorized access to Plaintiff's and Class Members' PII; and

f.      Failing to timely notify Plaintiff and Class Members about the Data Breach so that they could take timely and appropriate steps to mitigate the potential for identity theft and other damages.

98.      It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' PII would result in injury to Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyber-attacks and data breaches in the industry.

99.      It was therefore foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' PII would result in one or more types of injuries to them.

100.      As a direct and proximate result of Defendant's negligence set forth in the preceding paragraphs, Plaintiff and Class Members have suffered injury and damages as set forth herein, including but not limited to fraudulent misuse of their PII; loss of the opportunity to control how their PII is used; diminution in value of their PII; compromise and continuing publication of their PII; and are entitled to compensatory, actual, and punitive damages as a result of the Data Breach.

101.      Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## COUNT II: BREACH OF IMPLIED CONTRACT
### (On behalf of Plaintiff and the Nationwide Class)

102.    Plaintiff re-alleges and incorporates by reference all paragraphs above as if fully set forth herein.

103.    Defendant required Plaintiff and Class Members to provide and entrust their Private Information to Defendant as a condition of obtaining services from Defendant.

104.    When Plaintiff and Class Members provided their Private Information to Defendant, they entered into implied contracts with Defendant pursuant to which Defendant agreed to safeguard and protect such Private Information and to timely and accurately notify Plaintiff and Class Members if and when their Private Information was breached and compromised.

105.    Specifically, Plaintiff and Class Members entered into valid and enforceable implied contracts with Defendant when they agreed to provide their Private Information and/or payment to Defendant.

106.    The valid and enforceable implied contracts that Plaintiff and Class Members entered into with Defendant included Defendant's promises to protect Private Information it collected from Plaintiff and Class Members, or created on its own, from unauthorized disclosures. Plaintiff and Class Members provided this Private Information in reliance on Defendant's promises.

107.    Under the implied contracts, Defendant promised and was obligated to (a) provide services to Plaintiff and Class Members; and (b) protect Plaintiff's and Class Members' Private Information provided to obtain such services and/or created in connection therewith.  In exchange, Plaintiff and Class Members agreed to provide Defendant with payment and their Private Information.

108.    Defendant promised and warranted to Plaintiff and Class Members to maintain the privacy and confidentiality of the Private Information it collected from Plaintiff and Class Members and to keep such information safeguarded against unauthorized access and disclosure.

109.    Defendant's adequate protection of Plaintiff's and Class Members' Private Information was a material aspect of these implied contracts with Defendant.

110.    Defendant solicited and invited Plaintiff and Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

111.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with industry standards and relevant laws and regulations, including the FTC Act.

112.    Plaintiff and Class Members who contracted with Defendant for services and provided their Private Information to Defendant reasonably believed and expected that Defendant would adequately employ adequate data security to protect that Private Information. Defendant failed to do so.

113.    A meeting of the minds occurred when Plaintiff and Class Members agreed to, and did, provide their Private Information to Defendant and agreed Defendant would receive payment for, amongst other things, the protection of their Private Information.

114.    Plaintiff and Class Members performed their obligations under the contracts when they provided their Private Information and/or payment to Defendant.

115.    Defendant materially breached its contractual obligations to protect the Private Information it required Plaintiff and Class Members to provide when that Private Information was

unauthorizedly disclosed in the Data Breach due to Defendant's inadequate data security measures and procedures.

116.    Defendant materially breached its contractual obligations to deal in good faith with Plaintiff and Class Members when it failed to take adequate precautions to prevent the Data Breach and failed to promptly notify Plaintiff and Class Members of the Data Breach.

117.    Defendant materially breached the terms of its implied contracts, including but not limited to by failing to comply with industry standards or the standards of conduct embodied in statutes like Section 5 of the FTC Act, by failing to otherwise protect Plaintiff's and Class Members' Private Information, and/or by failing to prevent the same data security failures by its vendor IMS that handled Private Information, as set forth *supra*.

118.    The Data Breach was a reasonably foreseeable consequence of Defendant's conduct, by acts of omission or commission, in breach of these implied contracts with Plaintiff and Class Members.

119.    As a result of Defendant's failure to fulfill the data security protections promised in these contracts, Plaintiff and Class Members did not receive the full benefit of their bargains with Defendant, and instead received services of a diminished value compared to that described in the implied contracts.  Plaintiff and Class Members were therefore damaged in an amount at least equal to the difference in the value of the services with data security protection they paid for and that which they received.

120.    Had Defendant disclosed that its data security procedures were inadequate or that it did not adhere to industry-standard for cybersecurity, neither Plaintiff, Class Members, nor any reasonable person would have contracted with Defendant.

121.    Plaintiff and Class Members would not have provided and entrusted their Private Information to Defendant in the absence of the implied contracts between them and Defendant.

122.    Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

123.    Defendant breached the implied contracts it made with Plaintiff and Class Members by failing to safeguard and protect their Private Information and by failing to provide timely or adequate notice that their Private Information was compromised in and due to the Data Breach.

124.    As a direct and proximate result of Defendant's breach of its implied contracts with Plaintiff and Class Members and the attendant Data Breach, Plaintiff and Class Members have suffered injuries and damages as set forth herein and have been irreparably harmed, as well as suffering and the loss of the benefit of the bargain they struck with Defendant.

125.    Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or restitution, in an amount to be proven at trial.

126.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (a) strengthen its data security systems and monitoring procedures; (b) conduct annual audits of its vendor's data security systems and monitoring procedures; and (c) provide adequate lifetime credit monitoring to all Class Members.

## <u>COUNT III: INVASION OF PRIVACY/INSTRUSION UPON SECLUSION</u>
### (On behalf of Plaintiff and the Nationwide Class)

127.    Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

128.    Plaintiff and Class Members had a legitimate expectation of privacy to their Private Information and were entitled to Defendant's protection of this Private Information in its control against disclosure to unauthorized third parties.

129.    Defendant owed a duty to its customers, including Plaintiff and Class Members, to keep their Private Information confidential and secure.

130.    Defendant failed to protect Plaintiff's and Class Members' Private Information and instead caused it to be accessed and exposed to unauthorized persons.

131.    Defendant allowed unauthorized third parties access to and examination of the Private Information of Plaintiff and Class Members, by way of Defendant's failure to protect the Private Information through reasonable data security measures.

132.    The unauthorized release to, custody of, and examination by unauthorized third parties of the Private Information of Plaintiff and Class Members is highly offensive to a reasonable person and represents an intrusion upon Plaintiff's and Class Members' seclusion as well as a public disclosure of private facts.

133.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and Class Members disclosed their Private Information to Defendant as a condition of and in exchange for receiving services, but privately with an intention that the Private Information would be kept confidential and protected from unauthorized disclosure.  Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

134.    Subsequent to the intrusion, Defendant permitted Plaintiff's and Class Members' data to be published to an unknown number of cybercriminals whose mission is to misuse such information, including through identity theft.

135.    The Data Breach constitutes an intentional or reckless interference by Defendant with Plaintiff's and Class Members' interests in solitude or seclusion, as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

136.    Defendant acted with a knowing state of mind when it permitted the Data Breach to occur, because it had actual knowledge that its diligence and oversight of its vendors' information security practices were inadequate and insufficient to protect Plaintiff' and Class Members' Private Information from unauthorized disclosure.

137.    Defendant acted with reckless disregard for Plaintiff' and Class Members' privacy when it caused their Private Information to be shared, used, and stored without adequate protections, allowing cybercriminals to access and take Plaintiff's and Class Members' Private Information in the Data Breach.

138.    Defendant was aware of the potential of a data breach and failed to adequately vet, audit, or oversee its network systems or implement appropriate policies to prevent the unauthorized release of Plaintiff' and Class Members' Private Information to cybercriminals.

139.    Because Defendant acted with this knowing state of mind, it had notice and knew that its inadequate and insufficient information security practices would cause injury and harm to Plaintiff and Class Members.

140.    As a direct and proximate result of Defendant's acts and omissions set forth above, Plaintiff' and Class Members' Private Information was disclosed to third parties without authorization, causing Plaintiff and Class Members to suffer injuries and damages including, without limitation, (a) invasion of privacy; (b) lost or diminished value of their Private Information; (c) out-of-pocket and lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (d) loss of benefit of the bargain; and (e) the continued and certainly increased risk to their Private Information, which remains in Defendant's control and its vendors' possession in unencrypted

form and subject to further unauthorized disclosures, so long as Defendant fails to undertake appropriate and adequate measures to protect it.

141.    Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the Private Information maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come.  Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

**<u>COUNT IV: UNJUST ENRICHMENT</u>**
**(On behalf of Plaintiff and the Nationwide Class)**

142.    Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

143.    This count is brought in the alternative to the breach of implied contract count above.

144.    Plaintiff and Class Members conferred a benefit on Defendant by way providing, directly or indirectly, payment and their Private Information to Defendant as part of Defendant's business.

145.    Defendant required Plaintiff's and Class Members' Private Information to conduct and facilitate its business and generate revenue, which it could not do without collecting and using, Plaintiff's and Class Members' Private Information.

146.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profit at the expense of Plaintiff and Class Members by

implementing cheaper, ineffective security measures and diverting those funds to its own profit. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security and the safety of their Private Information.

147.    Defendant failed to provide reasonable security, safeguards, and protections to the Private Information of Plaintiff and Class Members, and as a result, Defendant was overpaid.

148.    Under principles of equity and good conscience, Defendant should not be permitted to retain the money because it failed to provide adequate safeguards and security measures to protect Plaintiff's and Class Members' Private Information, which Plaintiff and Class Members paid for but did not receive.

149.    Defendant wrongfully accepted and retained these benefits—payment and Plaintiff's and Class Members' Private Information—and was enriched to the detriment of Plaintiff and Class Members.

150.    Defendant's enrichment at Plaintiff's and Class Members' expense is unjust.

151.    As a result of Defendant's wrongful conduct and resulting unjust enrichment, Plaintiff and Class Members are entitled to restitution and disgorgement of profits, benefits, and other compensation obtained by Defendant, plus reasonable attorneys' fees and costs.

## COUNT V: DECLARATORY JUDGMENT
### (On behalf of Plaintiff and the Nationwide Class)

152.    Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

153.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant

further necessary supplemental relief.  The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

154.    In the fallout of the Data Breach, a controversy has arisen about Defendant's duties to use reasonable data security for the Private Information it collects, uses, shares, and maintains.

155.    On information and belief, Defendant's actions were—and *still* are—inadequate and unreasonable.  Plaintiff and Class Members continue to suffer injuries from the ongoing threat of fraud and identity theft due to Defendant's inadequate data security measures.

156.    Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring as follows:

157.    Defendant owed—and continue to owe—a legal duty to use reasonable data security to secure the Private Information entrusted to it;

158.    Defendant has a duty to notify impacted individuals of the Data Breach under the common law, Massachusetts law, and Section 5 of the FTC Act;

159.    Defendant breached, and continue to breach, its duties by failing to use reasonable measures to protect the Private Information entrusted to it from unauthorized access, use, and disclosure; and

160.    Defendant's breaches of its duties caused—and continues to cause—injuries to Plaintiff and Class Members.

161.    The Court should also issue injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the Private Information entrusted to it.

162.    Defendant failed to act proactively to prevent the exposure of thousands of individuals' Private Information in this Data Breach through improved data security vetting, auditing, and supervision measures of its handling Private Information, highlights the need for an

injunction here—lest Defendant continue to skimp on cybersecurity to augment its own profits while leaving individuals like Plaintiff and Class Members to suffer the consequences.

163.    If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injuries and lack an adequate legal remedy if Defendant experiences another data breach. And if another breach occurs, Plaintiff and Class Members will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full, and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages, while warranted for out-of-pocket damages and other legally quantifiable and provable damages, cannot cover the full extent of Plaintiff's and Class Members' injuries.

164.    If an injunction is not issued, the resulting hardship to Plaintiff and Class Members far exceeds the minimal hardship that Defendant could experience if an injunction is issued.

165.    An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class Members, and the public at large.

## VII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment as follows:

A.    An Order certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing her counsel to represent the Class;

B.    Awarding Plaintiff and the Class damages that include applicable compensatory, actual, statutory, nominal, exemplary, and punitive damages, as allowed by law;

C.    Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

D.    Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

E.    Awarding injunctive relief in the form of additional technical and administrative cybersecurity controls as is necessary to protect the interests of Plaintiff and the Class;

F.    Enjoining Defendant from further deceptive practices and making untrue statements about its data security, the Data Breach, and the transmitted Private Information;

G.    Awarding attorneys' fees and costs, as allowed by law;

H.    Awarding prejudgment and post-judgment interest, as provided by law; and

I.    Awarding such further relief to which Plaintiff and the Class are entitled.

## VIII.    DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues to triable.

Dated: September 20, 2024                Respectfully submitted,

/s/ Randi Kassan
Randi Kassan
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
100 Garden City Plaza
Garden City, NY  11530
Telephone: (212) 594-5300
rkassan@milberg.com

Gary M. Klinger* (*pro hac vice forthcoming*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
Email: gklinger@milberg.com

J. Gerard Stranch, IV*
Grayson Wells*
**STRANCH, JENNINGS & GARVEY, PLLC**

36

The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
(615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

*Motion for *Pro Hac Vice* Admission
forthcoming

**Counsel for Plaintiff and the Proposed Class**